## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

**ANGELICA POPIELEWSKI**                    **CIVIL ACTION NO.: 2:23-703**

**VERSUS**                                  **JUDGE:**

**STRATIGOS DYNAMICS, INC.**                **MAGISTRATE:**

### COLLECTIVE ACTION COMPLAINT
### UNDER THE FAIR LABOR STANDARDS ACT

Plaintiff Angelica Popielewski, a major domiciled in Calcasieu Parish, Louisiana, individually and on behalf of all others similarly situated (the "FLSA Collective"), brings this action against her former employer, defendant Stratigos Dynamics, Inc. ("SDI"), for failing to pay the plaintiff and all other similarly situated SDI employees (the "FLSA Collective") all of their minimum wage and overtime pay as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and for its unlawful retaliatory termination of the plaintiff in violation of the FLSA. In support of this action, the plaintiff respectfully represents as follows:

1.

Made defendant herein is Stratigos Dynamics, Inc. ("SDI"), a Louisiana corporation, which may be served through its registered agent United States Corporation Agents, Inc., 1100 Poydras Street, Suite 2900, New Orleans, Louisiana 70163.

2.

SDI provides armed and unarmed security and patrol services at multiple locations in states across the Gulf Coast, including Louisiana, Mississippi, and Texas.

3.

SDI is domiciled in, has its principal place of business in, and operates and conducts business in Calcasieu Parish, which is within this judicial district. SDI's wrongful conduct and

violations of the FLSA alleged in this Complaint as to the plaintiff also occurred within this judicial district. Therefore, the Western District of Louisiana is the proper venue for this action pursuant to 28 U.S.C. § 1391.

4.

The plaintiff brings this action, individually and on behalf of the FLSA Collective, against SDI for unpaid minimum wage and overtime compensation, lost past and future wages and benefits, general damages, including mental anguish and emotional distress, liquidated damages, reasonable attorney fees and costs, and any and all other legal or equitable relief available under the FLSA, 29 U.S.C. § 201, *et seq.*

5.

This Court has jurisdiction over the plaintiff's federal law claims and those of the FLSA Collective pursuant to 28 U.S.C. § 1331 and the FLSA.

**FACTUAL ALLEGATIONS RELATED TO ALL CLAIMS**

6.

The plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein, and in addition, alleges:

7.

Plaintiff Angelica Popielewski and the FLSA Collective were employed by SDI within the past three years.

8.

The plaintiff was employed by SDI beginning on or about February 10, 2022, until her unlawful and retaliatory termination on or about March 16, 2023.

9.

At all times pertinent to the allegations of this Complaint, SDI had an arrangement with Sasol under which SDI's employees provided security services at the Sasol Lake Charles Chemical Complex located in West Lake, Louisiana. SDI also has similar arrangements with other facilities located in Louisiana and other states, including Texas and Mississippi, for SDI employees to provide security services at those facilities. Members of the FLSA Collective worked for SDI at the Sasol Lake Charles Chemical Complex as well as in Louisiana and other states at the other facilities with which SDI had a contractual arrangement to provide security services.

10.

During her employment with SDI, the plaintiff worked as a security guard at the Sasol Lake Charles Chemical Complex.

11.

At all times pertinent to the allegations of this Complaint, SDI compensated the plaintiff and the FLSA Collective for their work on an hourly basis.

12.

During her employment with SDI, the plaintiff's weekly schedule generally consisted of three 12-hour shifts from 5:00 a.m. to 5:00 p.m. on either Sunday, Monday, and Tuesday, or on Thursday, Friday, and Saturday, as well as one six-hour shift on Wednesday. The plaintiff's scheduled Wednesday shift time would rotate, and was either 11:00 a.m. to 5:00 p.m. at the beginning of her on-hitch work week, or 5:00 a.m. to 11:00 a.m. for the last Wednesday of the hitch.

13.

Even though her guard shifts each day generally began at 5:00 a.m. (or 11:00 am for certain Wednesday shifts), SDI nevertheless mandated that the plaintiff be present 30 minutes before her shift, or at 4:30 a.m. (or at 10:30 a.m. for certain Wednesday shifts), to attend pre-shift meetings and handle other work-related matters. This pre-shift attendance requirement is imposed upon all SDI security guards, regardless of which shift they work, such that all employees in the FLSA Collective are required to be present 30 minutes before their guard shift begins.

14.

During these pre-shift meetings that begin 30 minutes before the scheduled shift time, the SDI team leader reviews information related to the performance of the employees' job duties that day, provides updates on any notable events or incidents that occurred during the previous shift so that the incoming employees are aware of them, and also provides information about individuals who are expected to arrive during the day or anything else of note that might be happening over the course of the upcoming shift so the employees are prepared for their shift.

15.

Following the pre-shift meeting, the employees are required to go to their assigned stations for that day, where they are then allowed to clock in for the day using a mobile application called m-Post, which SDI employees are required to have on their personal cell phones. However, SDI forbids its employees from clocking in until 10 minutes before their shifts begin. Thus, for the plaintiff's shifts which generally began at 5:00 a.m., she was not allowed to clock in using the m-Post application until at least 4:50 a.m. Upon information and belief, this rule was imposed by SDI to prevent its employees from being paid for all of the time they were

entitled to receive for the time they worked before their scheduled shift start time. Even though the plaintiff and the FLSA Collective would clock in through m-Post up to 10 minutes before the start of their scheduled shift time, they still were only paid for work hours beginning at the scheduled shift time, and not from when they clocked in.

16.

Despite mandating that all employees be present 30 minutes before their shifts began to attend pre-shift meetings and handle other work-related matters, SDI had a policy and practice of not paying its employees for any of the time during which SDI required them to be present before their guard shift start time. Instead, SDI pays its employees only for the hours that are specifically identified as their scheduled guard shift time.

17.

For example, on days that the plaintiff's scheduled shift was 5:00 a.m. to 5:00 p.m., SDI paid her for only 12 hours, even though the plaintiff was required to arrive 30 minutes before her 5:00 a.m. shift start time to attend mandatory pre-shift meetings and perform other work-related duties. Thus, the plaintiff, and every other SDI security guard, worked without pay for 30 minutes each day before their scheduled shifts, during which unpaid time they were engaged in mandatory employment related tasks at SDI's direction.

18.

Additionally, on some occasions, the plaintiff and other security guards were required to stay after their scheduled shifts ended. SDI also failed to pay its employees for that post-shift time during which it required its security guards to continue working.

19.

When a security guard's shift ends and she is relieved by the security guard who is assigned to that station for the next shift, at that point she uses the m-Post application to clock out. However, for various reasons, including delays in arriving at to the assigned station or pre-shift meetings that run longer than anticipated, the security guard who is taking over that station for the next shift does not always arrive exactly at the time their scheduled shift is to begin and when the outgoing guard's shift is scheduled to end. On those occasions, the outgoing security guard at that station must remain later than their scheduled shift end time. However, despite on occasion having to stay later than the scheduled shift end time to continue performing work-related tasks, SDI still only pays its security guards for their scheduled shift times. Thus, for the plaintiff, even on days when she was required to stay later than her 5:00 p.m. shift end time, and even when she clocked out using the m-Post application after 5:00 p.m., she was still only paid for time worked up to 5:00 p.m., and not afterwards.

20.

At all times material to the allegations of this Complaint, SDI failed to comply with the FLSA by (1) requiring the plaintiff and the FLSA Collective to be present and attend pre-shift meetings and handle other work-related matters every day 30 minutes before their shifts began without pay, and (2) requiring the plaintiff and the FLSA Collective to continue working without pay on some occasions after their shifts had ended.

21.

SDI's failure to pay the plaintiff and the FLSA Collective for all of the time they worked constituted a violation of both the minimum wage and overtime provisions of the FLSA.

22.

For workweeks in which an employee worked less than 40 hours, and in which the additional time that employee was required by SDI to work before and after his shift without pay did not result in that employee working in excess of 40 hours, SDI's failure to pay the employee for the additional time worked constitutes a violation of the FLSA's minimum wage provisions.

23.

For workweeks in which an employee worked in excess of 40 hours, and/or in which the additional time that employee was required by SDI to work before and after his shift without pay resulted in that employee working in excess of 40 hours, SDI's failure to pay the employee for the additional time worked constitutes a violation of the FLSA's overtime provisions.

24.

SDI willfully operated under a scheme to deprive the plaintiff and the FLSA Collective of proper minimum wages and/or overtime compensation by failing to pay them for all hours worked as required under federal law.

25.

SDI knew that the plaintiff and the FLSA Collective performed work that required proper payment of minimum wage and/or overtime compensation.

26.

SDI was aware of its unlawful payment practices and chose to disregard the consequences of its actions.

27.

The plaintiff and the FLSA Collective were entitled to be paid for all time worked for SDI, including time and one-half their regular rate of pay for each hour worked in excess of 40 hours per work week.

28.

Almost immediately upon beginning her employment on or about February 10, 2022, the plaintiff recognized that SDI's requirement that its employees arrive for and participate in pre-shift meetings and other work-related matters 30 minutes before their scheduled shift time every day without pay was unlawful. Therefore, shortly after her employment began, she started making verbal complaints repeatedly and on multiple occasions to her supervisors and others within SDI's management that this practice was in violation of the FLSA.

29.

On or around February 12, 2022, the plaintiff asked Brian Haley, who at the time was her team leader, about the requirement that she arrive at 4:30 a.m. Mr. Haley told her to ask their administrator about it. Therefore, on February 15, 2022, the plaintiff asked her administrator, Logan Perry, about the requirement that she arrive at 4:30 a.m. and participate in work meetings without pay, and further advised Mr. Perry that this was a violation of the FLSA. Mr. Perry simply instructed her to do as she was told.

30.

On or around May 12, 2022, the plaintiff spoke with Brandon Paul, who at that time was her team leader, about the FLSA rules and her belief that it was not legal to require employees to attend pre-shift meetings at 4:30 a.m. without pay. Mr. Paul advised the plaintiff that he would look into it. The next day, the plaintiff asked Mr. Paul whether it would be reasonable for her to

ask about FLSA in pre-shift, he told her "not if you need your position." The plaintiff understood this to be a threat of retaliation and that she would be terminated if she continued to ask questions about her right under the FLSA to be paid for all of the time that she worked.

31.

On or around September 2, 2022, the plaintiff initially went to her assigned station rather than the pre-shift meeting location, and as a result, she arrived for the pre-shift meeting at 4:34 a.m. instead of 4:30 a.m. Amy Benoit, who at that time was her team leader, informed her that she was late and needed to arrive at 4:30 a.m. The plaintiff responded that her shift actually starts at 5:00 a.m. and ends at 5:00 p.m. Ms. Benoit told her that was incorrect, and that if she does not arrive for work by 4:30 a.m., then she will be given points for being late.[1]

32.

On or around September 15, 2022, the plaintiff made a verbal complaint to Ms. Benoit, in response to Ms. Benoit's question to the employees about what they thought could be improved. The plaintiff asked Ms. Benoit whether she could speak freely, to which Ms. Benoit responded that she could. The plaintiff listed several issues she believed could be improved, including better training for employees, revisions of standard operating procedures, and SDI's non-compliance with the FLSA by requiring employees to attend mandatory pre-shift meetings without pay. Ms. Benoit responded that she would look into it, but that it was not the plaintiff's place to be concerned about the FLSA compliance issue.

33.

Following her September 15, 2022 discussion with Ms. Benoit, the plaintiff was moved away from her station of choice where she had previously worked and was instead assigned to

---

[1] As discussed in more detail below, SDI assigns points to employees as discipline for being late, leaving early, or not showing up for work.

work entire shifts in a vehicle, which required her to simply sit and watch the same gate for her full 12-hour shifts. When the plaintiff asked why she had been moved to that assignment, she was told that this was just part of the proper assignment rotation that applied to everyone. However, in fact, not all security guards were being rotated to different assignments as the plaintiff had been. SDI's act of reassigning the plaintiff to a less desirable assignment was instead retaliation because of her questions and complaints about SDI's failure to comply with the FLSA, which was intended to get the plaintiff to quit, or to at least stop asking such questions.

34.

In the weeks prior to September 29, 2022, Chandler Levi was demoted from administrator to team leader, and on September 29, 2022, Amy Benoit was promoted from team leader to administrator. Following Mr. Levi's demotion, the plaintiff spoke with him about SDI's violations of the FLSA approximately once every two weeks when their schedules aligned. Mr. Levi agreed with the plaintiff that SDI's failure to pay for pre-shift and post-shift work was a violation of the FLSA, but he told the plaintiff that he did not believe it was worth losing his job over it.

35.

On or about February 14, 2023, the plaintiff complained to Ms. Benoit about an incident that had occurred the previous day, in which the plaintiff and Mr. Levi were ignored by several members of SDI's management, including Ms. Benoit. During her conversation with Ms. Benoit, the plaintiff again raised the same complaints she had previously discussed with Ms. Benoit about SDI's unlawful requirement that she and other employees work without pay both before and after their scheduled shifts. The plaintiff also asked Ms. Benoit why SDI does not have

visible FLSA posters and other Department of Labor posters with information about employee rights under federal law. Ms. Benoit told the plaintiff that these issues were above her level of intelligence.

36.

On or about February 20, 2023, a day on which the plaintiff was not scheduled to work, the plaintiff was in an automobile accident. As a result of the accident, the plaintiff missed the safety council refresher course that she was scheduled to attend that day. Later that day, Ms. Benoit sent a message to the plaintiff on WhatsApp, which SDI used to communicate among its employees, advising her that because she missed the refresher course, the plaintiff would not be permitted to return to her shift until she completed the course. That was inconsistent with how SDI and Ms. Benoit had treated other employees in the past who had missed their refresher courses. In fact, the plaintiff is aware of another employee, Kayla Thomas, who worked on one of Ms. Benoit's shifts who had not renewed her training for several months but was still allowed to continue working. The plaintiff returned to work on February 28, 2023, after completing the refresher course and also providing SDI with a doctor's note excusing her from work for the previous week because of the automobile collision.

37.

On March 16, 2023, which was a day the plaintiff was scheduled to be off work, she missed a call from Amy Benoit. When the plaintiff returned the call, Ms. Benoit informed the plaintiff that she was being terminated.

38.

The purported reason that SDI gave for terminating the plaintiff was that she had purportedly accrued excessive points for tardiness and other attendance issues. However, that

purported basis for the plaintiff's termination was pretextual and a sham, and in fact the actual reason for her termination was because she had complained about SDI's failure to pay her and other employees for time owed to them under the law. This termination was in violation of the anti-retaliation provisions of the FLSA.

39.

SDI handles employee attendance matters with a point system, under which employees are assigned points for certain acts, such as taking sick or personal leave, being late, leaving early, or a no call/no show. After accruing a defined number of points over a defined period of time, an employee is subject to various escalating levels of discipline, including verbal or written warnings, suspension, and ultimately termination.

40.

SDI's disciplinary action letter, which was created on March 13, 2023, just days before the plaintiff was terminated, states that the plaintiff had accrued over 20 points, resulting in the request for her to be terminated. The plaintiff had previously seen a listing of her points which did not include all of the points that were later included on the disciplinary action letter that was used as a purported justification for her termination. Based on that discrepancy between the two lists and the surrounding circumstances, the plaintiff believes that SDI retroactively added most of these points to the plaintiff's file after the plaintiff's conversation with Ms. Benoit on February 14, 2023, to manufacture a purported legitimate excuse for her termination, which was in fact unlawful retaliation because of the plaintiff's complaints about SDI's failure to comply with the FLSA.

41.

According to the disciplinary action letter, SDI assigned points to the plaintiff for purportedly being late for her 5:00 a.m. shift on numerous occasions, even for dates when she had arrived at or before the time her shift was scheduled to begin. In fact, more than half of the points that SDI assigned to the plaintiff, which it used as the sham, pretextual basis for her termination, are for dates on which the plaintiff was deemed "late" even though she arrived at or before the time her 5:00 a.m. shift began. The plaintiff was even considered "late" for days on which she was as much as 26 minutes *early* for her 5:00 a.m. shift.

42.

Thus, not only were the plaintiff and the FLSA collective not paid for the time that SDI mandated them to be present to attend pre-shift meetings and perform other work-related tasks before their scheduled shifts began, but SDI further used the plaintiff's non-compliance with its unlawful mandate as a pretext for her termination, when the reason she was actually terminated was because she had questioned and complained to SDI's management about its unlawful practices and violations of the FLSA.

43.

The records, to the extent any exist, concerning the number of hours worked, amounts paid to the plaintiff and the FLSA Collective, and other information relevant to the allegations of this Complaint, are in the possession and custody of SDI, which as an employer is required by law to maintain such records, including pursuant to 29 U.S.C. § 211 and 29 C.F.R. Part 516.

**COUNT I**
**Unpaid Minimum Wage and Overtime Wages Under the FLSA**
*On Behalf of the Plaintiff and the FLSA Collective*

44.

The plaintiff realleges and incorporates by reference the above paragraphs as if fully set forth herein, and in addition, alleges:

45.

The plaintiff brings Count I individually and on behalf of all similarly situated employees, specifically: All full-time and part-time security guards who were employed by SDI at any facility where SDI provided security services and who were paid on an hourly basis at any time from three years prior to the filing of this Complaint until the date of final judgment in this matter (the proposed "FLSA Collective").

46.

SDI is an "employer" and an "enterprise" and is engaged in "commerce" within the meaning of the FLSA. 29 U.S.C. § 203(b), (d), (r), and (s).

47.

The FLSA requires covered employers like SDI to pay non-exempt employees like the plaintiff and the FLSA Collective no less than $7.25 per hour for all hours worked, as well as one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek. 29 U.S.C. § 206 and 207.

48.

The plaintiff and the FLSA Collective regularly worked more than 40 hours per week for SDI, but SDI did not properly compensate them for the statutory minimum wage owed to them for all regular hours worked, nor the statutory amounts due for all of their overtime hours as required by the FLSA.

49.

SDI did not and has not made a good-faith effort to comply with the FLSA as it relates to the compensation of the plaintiff and the FLSA Collective.

50.

SDI knew that the plaintiff and the FLSA Collective worked regular and overtime hours without proper compensation, and it willfully failed and refused to pay the plaintiff and the FLSA Collective wages at the required minimum wage and overtime rates for all hours worked. *See* 29 U.S.C. § 255.

51.

SDI's willful failure and refusal to pay the plaintiff and the FLSA Collective the mandatory minimum and overtime wages for all time worked violates the FLSA. 29 U.S.C. § 206 and 207.

52.

As a direct and proximate result of SDI's unlawful practices, the plaintiff and the FLSA Collective suffered and continue to suffer wage loss and are therefore entitled to recover unpaid minimum and overtime wages for up to three years prior to the filing of their claims, liquidated damages or prejudgment interest, attorney fees and costs, and such other legal and equitable relief as the Court deems just and proper.

53.

The plaintiff consents in writing to assert her claims for unpaid wages under the FLSA pursuant to 29 U.S.C. § 216(b). The plaintiff's signed consent form is filed with the Court as **Exhibit A** to this Complaint. As this case proceeds, it is likely that other individuals will file consent forms and join as opt-in plaintiffs.

54.

The plaintiff and the FLSA Collective are all victims of SDI's repeated, systematic, and consistent illegal policies that have resulted in willful violations of their rights under the FLSA, which have caused significant damage to the plaintiff and the FLSA Collective.

55.

These individuals would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join by filing their written consent.

**COUNT II**
**Violation of the Anti-Retaliation Provision of the FLSA, 29 U.S.C. § 215(a)(3)**
***On Behalf of the Plaintiff***

56.

The plaintiff realleges and incorporates by reference the above paragraphs as if fully set forth herein, and in addition, alleges:

57.

The FLSA prohibits retaliation against employees and former employees because they assert their rights under the FLSA. The provision prohibits, among other things, "any person" from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter [8 of the FLSA], or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3).

58.

SDI violated 29 U.S.C. § 215(a)(3) in retaliating against the plaintiff by reassigning her to an unfavorable shift assignment because of and immediately following the plaintiff's complaints to Amy Benoit on September 15, 2022, regarding SDI's failure to comply with the FLSA.

59.

SDI further violated 29 U.S.C. § 215(a)(3) in terminating the plaintiff because of her complaints and questioning during the course of her employment about SDI's unlawful practice in violation of the FLSA of mandating the plaintiff and other similarly situated employees to be present 30 minutes before their shift for work-related matters without pay and to continue working after their shifts without pay, and for informing SDI and its management that she believed this practice to be unlawful.

60.

As a result of SDI's unlawful retaliatory reassignment and termination of the plaintiff in violation of the FLSA, the plaintiff suffered and continues to suffer damages, including past and future lost wages and benefits as well as general damages, including mental anguish and emotional distress, for which she is entitled to an award of monetary damages, liquidated damages or prejudgment interest, attorney fees and costs, and such other legal and equitable relief as the Court deems just and proper, pursuant to 29 U.S.C. § 216(b).

**PRAYER FOR RELIEF**

61.

**WHEREFORE**, Plaintiff Angelica Popielewski, individually and on behalf of the proposed FLSA Collective, prays for relief as follows:

a) A finding that the plaintiff and the FLSA Collective are similarly situated;

b) Certification of this case as a collective action pursuant to 29 U.S.C. § 216(b);

c) Authorization for the prompt issuance of notice to all those similarly situated, apprising them of the pendency of this action and providing them with the opportunity to assert timely FLSA claims by filing individual consent forms;

d) A finding that SDI's violations of the FLSA are willful pursuant to 29 U.S.C. § 255(a);

e) Judgment against SDI for an amount equal to the plaintiff's and the FLSA Collective's

unpaid back wages at the applicable minimum wage and/or overtime rates;

f)  An amount equal to the plaintiff's and the FLSA Collective's damages as liquidated damages;

g)  Judgment against SDI for the plaintiff's damages caused by SDI's violation of the FLSA's anti-retaliation provision, including past and future lost wages and benefits, general damages, including mental anguish and emotional distress, and all other damages available under the law;

h)  An amount equal to the plaintiff's damages caused by SDI's violation of the FLSA's anti-retaliation provision as liquidated damages;

i)  All costs and attorneys' fees incurred prosecuting this suit;

j)  An award of any pre- and post-judgment interest;

k)  Leave to add additional plaintiffs or claims by motion, the filing of written consent forms, or any other method approved by the Court; and

l)  All further relief as the Court deems just and equitable.

Respectfully submitted:

Simien & Simien, L.L.C.
Attorneys and Counselors at Law
7908 Wrenwood Boulevard
Baton Rouge, Louisiana 70809
Telephone:  (225) 932-9221
FAX:  (225) 932-9286


_____*s/ Roy Bergeron, Jr.*_____
By:    Eulis Simien, Jr., Bar # 12077
         eulissimien@simien.com
         Jimmy Simien, Bar # 1598
         jimmysimien@simien.com
         Roy Bergeron, Jr., Bar # 33726
         roybergeron@simien.com