**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

**ANGELICA POPIELEWSKI**                    **NO. 2:23-cv-00703**

**VERSUS**                                             **JUDGE JAMES D. CAIN, JR.**

**STRATIGOS DYNAMICS, INC.**             **MAG. JUDGE THOMAS P. LEBLANC**

**SECOND SUPERSEDING AND AMENDING**
**COLLECTIVE ACTION COMPLAINT**
**UNDER THE FAIR LABOR STANDARDS ACT**

NOW INTO COURT, through undersigned counsel, comes plaintiff Angelica Popielewski, who pursuant to Fed. R. Civ. P. 15(a)(2) and with written consent of the defendant, files this "Second Superseding and Amending Collective Action Complaint Under the Fair Labor Standards Act," which replaces and supersedes the "First Superseding and Amending Collective Action Complaint Under the Fair Labor Standards Act" (Doc. 8), as follows:

Plaintiffs Angelica Popielewski, Brandon Paul, Arlesia Jackson, Gwendolyn Brown, Kayla Dodd, and Zmonte Banks, all of whom are majors domiciled in Calcasieu Parish, Louisiana, each individually and on behalf of all others similarly situated, bring this action against their former employer, defendant Stratigos Dynamics, Inc. ("SDI"), for failing to pay the plaintiffs and all other similarly situated current and former SDI employees who worked at the Sasol Lake Charles Chemical Complex (the "FLSA Collective") all of their minimum wage and overtime pay as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and for its unlawful retaliatory termination of plaintiff Angelica Popielewski in violation of the FLSA. In support of this action, the plaintiffs respectfully represent as follows:

1.

Made defendant herein is Stratigos Dynamics, Inc. ("SDI"), a Louisiana corporation, which may be served through its registered agent United States Corporation Agents, Inc., 1100 Poydras Street, Suite 2900, New Orleans, Louisiana 70163.

2.

SDI provides armed and unarmed security and patrol services at multiple locations in states across the Gulf Coast, including Louisiana, Mississippi, and Texas.

3.

SDI is domiciled in, has its principal place of business in, and operates and conducts business in Calcasieu Parish, which is within this judicial district. SDI's wrongful conduct and violations of the FLSA alleged in this Complaint as to the plaintiffs also occurred within this judicial district. Therefore, the Western District of Louisiana is the proper venue for this action pursuant to 28 U.S.C. § 1391.

4.

The plaintiffs bring this action, individually and on behalf of the FLSA Collective, against SDI for unpaid minimum wage and overtime compensation, lost past and future wages and benefits, general damages, including mental anguish and emotional distress, liquidated damages, reasonable attorney fees and costs, and any and all other legal or equitable relief available under the FLSA, 29 U.S.C. § 201, *et seq.*

5.

This Court has jurisdiction over the plaintiffs' federal law claims and those of the FLSA Collective pursuant to 28 U.S.C. § 1331 and the FLSA.

## FACTUAL ALLEGATIONS RELATED TO ALL PLAINTIFFS

6.

The plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

7.

Plaintiffs and the FLSA Collective were employed by SDI within the three years prior to the filing of the original Complaint on May 26, 2023.

8.

At all times pertinent to the allegations of this Complaint, SDI had an arrangement with Sasol under which SDI's employees provided security services at the Sasol Lake Charles Chemical Complex located in West Lake, Louisiana. Members of the FLSA Collective worked for SDI at the Sasol Lake Charles Chemical Complex.

9.

At all times pertinent to the allegations of this Complaint, SDI compensated the plaintiffs and the FLSA Collective for their work on an hourly basis.

10.

During their employment with SDI, the plaintiffs' weekly schedule generally consisted of three 12-hour shifts on either Sunday, Monday, and Tuesday, or on Thursday, Friday, and Saturday, as well as one six-hour shift on Wednesday. Thus, the plaintiffs and the FLSA Collective typically were assigned 42 hours of total scheduled shift time each workweek.

11.

In addition to their scheduled shift times, SDI mandated that the plaintiffs and all employees in the FLSA Collective be present 30 minutes before their shifts began to attend pre-

shift meetings and handle other work-related matters. This pre-shift attendance requirement is imposed upon all SDI security guards, officers, team leaders, and other SDI employees, regardless of which shift they work, such that all employees in the FLSA Collective are required to be present 30 minutes before their shift is scheduled to begin.

12.

During these pre-shift meetings that begin 30 minutes before the scheduled shift time, the SDI team leader reviews information related to the performance of the employees' job duties that day, provides updates on any notable events or incidents that occurred during the previous shift so that the incoming employees are aware of them, and also provides information about individuals who are expected to arrive during the day or anything else of note that might be happening over the course of the upcoming shift so the employees are prepared for their shift.

13.

Following the pre-shift meeting, the employees are required to go to their assigned stations for that day, where they are then allowed to clock in for the day using a mobile application called m-Post, which SDI employees are required to have on their personal cell phones. However, SDI forbids its employees from clocking in until 10 minutes before their shifts begin. Thus, for a shift that begins at 5:00 a.m., that employee is not allowed to clock in using the m-Post application until at least 4:50 a.m. Upon information and belief, this rule was imposed by SDI to prevent its employees from being paid for all of the time they were entitled to receive for the time they worked before their scheduled shift start time. Even though the plaintiffs and the FLSA Collective would clock in through m-Post up to 10 minutes before the start of their scheduled shift time, they still were only paid for work hours beginning at the scheduled shift time, and not from when they clocked in.

14.

Despite mandating that all employees be present 30 minutes before their shifts began to attend pre-shift meetings and handle other work-related matters, SDI had a policy and practice of not paying its employees for any of the time during which SDI required them to be present before their shift start time. Instead, SDI pays its employees only for the hours that are specifically identified as their scheduled shift time.

15.

For example, on days that an employee's scheduled shift was 5:00 a.m. to 5:00 p.m., SDI paid that employee for only 12 hours, even though the employee was required to arrive 30 minutes before her 5:00 a.m. shift start time to attend mandatory pre-shift meetings and perform other work-related duties. Thus, the plaintiffs and every SDI employee in the FLSA Collective was suffered or permitted to work without pay for 30 minutes each day before their scheduled shifts, during which unpaid time they were engaged in mandatory employment related tasks at SDI's direction.

16.

Additionally, on some occasions, SDI employees in the FLSA Collective were required to stay after their scheduled shifts ended. SDI also failed to pay its employees for that post-shift time during which it required its security guards to continue working.

17.

When an employee's shift ends and she is relieved by the employee who is assigned to that station for the next shift, at that point she uses the m-Post application to clock out. However, for various reasons, including delays in arriving at to the assigned station or pre-shift meetings that run longer than anticipated, the employee who is taking over that station for the next shift

does not always arrive exactly at the time their scheduled shift is to begin and when the outgoing employee's shift is scheduled to end. On those occasions, the outgoing employee at that station must remain later than their scheduled shift end time. However, despite on occasion having to stay later than the scheduled shift end time to continue performing work-related tasks, SDI still only pays its employees for their scheduled shift times. Thus, even on days when an employee is required to stay later than her shift end time, and even when she clocked out using the m-Post application after her shift end time, she was still only paid for time worked up to her shift end time, and not for the time she continued to perform work for SDI afterwards.

18.

At all times material to the allegations of this Complaint, SDI failed to comply with the FLSA by (1) requiring the plaintiffs and the FLSA Collective to be present for and attend pre-shift meetings and handle other work-related matters every day 30 minutes before their shifts began without pay, and (2) requiring the plaintiffs and the FLSA Collective to continue working without pay on some occasions after their shifts had ended.

19.

SDI's failure to pay the plaintiffs and the FLSA Collective for all of the time they worked constituted a violation of both the minimum wage and overtime provisions of the FLSA.

20.

For workweeks in which an employee worked less than 40 hours, and in which the additional time that employee was required by SDI to work before and after his shift without pay did not result in that employee working in excess of 40 hours, SDI's failure to pay the employee for the additional time worked constitutes a violation of the FLSA's minimum wage provisions.

21.

For workweeks in which an employee worked in excess of 40 hours, and/or in which the additional time that employee was required by SDI to work before and after his shift without pay resulted in that employee working in excess of 40 hours, SDI's failure to pay the employee for the additional time worked constitutes a violation of the FLSA's overtime provisions.

22.

SDI willfully operated under a scheme to deprive the plaintiffs and the FLSA Collective of proper minimum wages and/or overtime compensation by failing to pay them for all hours worked as required under federal law.

23.

SDI knew that the plaintiffs and the FLSA Collective performed work that required proper payment of minimum wage and/or overtime compensation.

24.

SDI was aware of its unlawful payment practices and chose to disregard the consequences of its actions.

25.

The plaintiffs and the FLSA Collective were entitled to be paid for all time worked for SDI, including time and one-half their regular rate of pay for each hour worked in excess of 40 hours per work week.

26.

The records, to the extent any exist, concerning the number of hours worked, amounts paid to the plaintiffs and the FLSA Collective, and other information relevant to the allegations

of this Complaint, are in the possession and custody of SDI, which as an employer is required by law to maintain such records, including pursuant to 29 U.S.C. § 211 and 29 C.F.R. Part 516.

## ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF ANGELICA POPIELEWSKI

27.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

28.

Plaintiff Angelica Popielewski was employed by SDI beginning on or about February 10, 2022, until her unlawful and retaliatory termination on or about March 16, 2023.

29.

During her employment with SDI, Ms. Popielewski worked as a security guard at the Sasol Lake Charles Chemical Complex.

30.

During her employment with SDI, Ms. Popielewski's scheduled shifts were generally from 5:00 a.m. to 5:00 p.m. on either Sunday, Monday, and Tuesday, or on Thursday, Friday, and Saturday, as well as one six-hour shift on Wednesday. Ms. Popielewski's scheduled Wednesday shift time would rotate, and was either 11:00 a.m. to 5:00 p.m. at the beginning of her on-hitch work week, or 5:00 a.m. to 11:00 a.m. for the last Wednesday of the hitch.

31.

At all times during her employment with SDI, Ms. Popielewski was required to attend pre-shift meetings which began 30 minutes before every scheduled shift.

32.

Almost immediately upon beginning her employment on or about February 10, 2022, Ms. Popielewski recognized that SDI's requirement that its employees arrive for and participate in pre-shift meetings and other work-related matters 30 minutes before their scheduled shift time every day without pay was unlawful. Therefore, shortly after her employment began, she started making verbal complaints repeatedly and on multiple occasions to her supervisors and others within SDI's management that this practice was in violation of the FLSA.

33.

On or around February 12, 2022, Ms. Popielewski asked Brian Haley, who at the time was her team leader, about the requirement that she arrive at 4:30 a.m. Mr. Haley told her to ask their administrator about it. Therefore, on February 15, 2022, Ms. Popielewski asked her administrator, Logan Perry, about the requirement that she arrive at 4:30 a.m. and participate in work meetings without pay, and further advised Mr. Perry that this was a violation of the FLSA. Mr. Perry simply instructed her to do as she was told.

34.

On or around May 12, 2022, Ms. Popielewski spoke with plaintiff Brandon Paul, who at that time was her team leader, about the FLSA rules and her belief that it was not legal to require employees to attend pre-shift meetings at 4:30 a.m. without pay. Mr. Paul advised Ms. Popielewski that he would look into it. The next day, when Ms. Popielewski asked Mr. Paul whether it would be reasonable for her to ask about FLSA in pre-shift, he told her "not if you need your position." Ms. Popielewski understood this to be a threat of retaliation from SDI's management and that she would be terminated if she continued to ask questions about her right under the FLSA to be paid for all of the time that she worked.

35.

On or around September 2, 2022, Ms. Popielewski initially went to her assigned station rather than the pre-shift meeting location, and as a result, she arrived for the pre-shift meeting at 4:34 a.m. instead of 4:30 a.m. Amy Benoit, who at that time was her team leader, informed her that she was late and needed to arrive at 4:30 a.m. Ms. Popielewski responded that her shift actually starts at 5:00 a.m. and ends at 5:00 p.m. Ms. Benoit told her that was incorrect, and that if she does not arrive for work by 4:30 a.m., then she will be given points for being late.[1]

36.

On or around September 15, 2022, Ms. Popielewski made a verbal complaint to Ms. Benoit, in response to Ms. Benoit's question to the employees about what they thought could be improved. Ms. Popielewski asked Ms. Benoit whether she could speak freely, to which Ms. Benoit responded that she could. Ms. Popielewski listed several issues she believed could be improved, including better training for employees, revisions of standard operating procedures, and SDI's non-compliance with the FLSA by requiring employees to attend mandatory pre-shift meetings without pay. Ms. Benoit responded that she would look into it, but that it was not Ms. Popielewski's place to be concerned about the FLSA compliance issue.

37.

Following her September 15, 2022 discussion with Ms. Benoit, Ms. Popielewski was moved away from her station of choice where she had previously worked and was instead assigned to work entire shifts in a vehicle, which required her to simply sit and watch the same gate for her full 12-hour shifts. When Ms. Popielewski asked why she had been moved to that assignment, she was told that this was just part of the proper assignment rotation that applied to

---

[1] As discussed in more detail below, SDI assigns points to employees as discipline for being late, leaving early, or not showing up for work.

everyone. However, in fact, not all security guards were being rotated to different assignments as Ms. Popielewski had been. SDI's act of reassigning Ms. Popielewski to a less desirable assignment was instead retaliation because of her questions and complaints about SDI's failure to comply with the FLSA, which was intended to get Ms. Popielewski to quit, or to at least stop asking such questions.

38.

In the weeks prior to September 29, 2022, Chandler Levi was demoted from administrator to team leader, and on September 29, 2022, Amy Benoit was promoted from team leader to administrator. Following Mr. Levi's demotion, Ms. Popielewski spoke with him about SDI's violations of the FLSA approximately once every two weeks when their schedules aligned. Mr. Levi agreed with Ms. Popielewski that SDI's failure to pay for pre-shift and post-shift work was a violation of the FLSA, but he told Ms. Popielewski that he did not believe it was worth losing his job over it.

39.

On or about February 14, 2023, Ms. Popielewski complained to Ms. Benoit about an incident that had occurred the previous day, in which Ms. Popielewski and Mr. Levi were ignored by several members of SDI's management, including Ms. Benoit. During her conversation with Ms. Benoit, Ms. Popielewski again raised the same complaints she had previously discussed with Ms. Benoit about SDI's unlawful requirement that she and other employees work without pay both before and after their scheduled shifts. Ms. Popielewski also asked Ms. Benoit why SDI does not have visible FLSA posters and other Department of Labor posters with information about employee rights under federal law. Ms. Benoit told Ms. Popielewski that these issues were above her level of intelligence.

40.

On or about February 20, 2023, a day on which Ms. Popielewski was not scheduled to work, she was in an automobile accident. As a result of the accident, Ms. Popielewski missed the safety council refresher course that she was scheduled to attend that day. Later that day, Ms. Benoit sent a message to Ms. Popielewski on WhatsApp, which SDI used to communicate among its employees, advising her that because she missed the refresher course, Ms. Popielewski would not be permitted to return to her shift until she completed the course. That was inconsistent with how SDI and Ms. Benoit had treated other employees in the past who had missed their refresher courses. In fact, Ms. Popielewski is aware of another employee, Kayla Thomas, who worked on one of Ms. Benoit's shifts who had not renewed her training for several months but was still allowed to continue working. Ms. Popielewski returned to work on February 28, 2023, after completing the refresher course and also providing SDI with a doctor's note excusing her from work for the previous week because of the automobile collision.

41.

On March 16, 2023, which was a day Ms. Popielewski was scheduled to be off work, she missed a call from Amy Benoit. When Ms. Popielewski returned the call, Ms. Benoit informed Ms. Popielewski that she was being terminated.

42.

The purported reason that SDI gave for terminating Ms. Popielewski was that she had purportedly accrued excessive points for tardiness and other attendance issues. However, that purported basis for Ms. Popielewski's termination was pretextual and a sham, and in fact the actual reason for her termination was because she had complained about SDI's failure to pay her

and other employees for time owed to them under the law. This termination was in violation of the anti-retaliation provisions of the FLSA.

43.

SDI handles employee attendance matters with a point system, under which employees are assigned points for certain acts, such as taking sick or personal leave, being late, leaving early, or a no call/no show. After accruing a defined number of points over a defined period of time, an employee is subject to various escalating levels of discipline, including verbal or written warnings, suspension, and ultimately termination.

44.

SDI's disciplinary action letter, which was created on March 13, 2023, just days before Ms. Popielewski was terminated, states that she had accrued over 20 points, resulting in the request for her to be terminated. Ms. Popielewski had previously seen a listing of her points which did not include all of the points that were later included on the disciplinary action letter that was used as a purported justification for her termination. Based on that discrepancy between the two lists and the surrounding circumstances, Ms. Popielewski believes that SDI retroactively added most of these points to her file after her conversation with Ms. Benoit on February 14, 2023, to manufacture a purported legitimate excuse for her termination, which was in fact unlawful retaliation because of Ms. Popielewski's complaints about SDI's failure to comply with the FLSA.

45.

According to the disciplinary action letter, SDI assigned points to Ms. Popielewski for purportedly being late for her 5:00 a.m. shift on numerous occasions, even for dates when she had arrived at or before the time her shift was scheduled to begin. In fact, more than half of the

points that SDI assigned to Ms. Popielewski, which it used as the sham, pretextual basis for her termination, are for dates on which she was deemed "late" even though she arrived at or before the time her 5:00 a.m. shift began. Ms. Popielewski was even considered "late" for days on which she was as much as 26 minutes *early* for her 5:00 a.m. shift.

46.

Thus, not only were Ms. Popielewski and the FLSA collective not paid for the time that SDI mandated them to be present to attend pre-shift meetings and perform other work-related tasks before their scheduled shifts began, but SDI further used Ms. Popielewski's non-compliance with its unlawful mandate as a pretext for her termination, when the reason she was actually terminated was because she had questioned and complained to SDI's management about its unlawful practices and violations of the FLSA.

## ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF BRANDON PAUL

47.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

48.

Plaintiff Brandon Paul was employed by SDI beginning on or about November 2021 until on or about November 2022.

49.

During his employment with SDI, Mr. Paul worked as a day guard, an assistant supervisor, and a supervisor at the Sasol Lake Charles Chemical Complex.

50.

During his employment with SDI, Mr. Paul on some occasions had scheduled shifts that began at 5:00 a.m. and ended at 5:00 p.m., while on other occasions he had scheduled shifts that began at 5:00 p.m. and ended at 5:00 a.m.

51.

At all times during his employment with SDI, Mr. Paul was required to attend pre-shift meetings which began 30 minutes before every scheduled shift.

52.

SDI did not pay Mr. Paul for any of the time he attended the mandatory pre-shift meetings each day of his employment.

53.

Mr. Paul understood that attendance at the pre-shift meetings was mandatory. In fact, as a supervisor, it was Mr. Paul's responsibility to enforce SDI's requirement that employees under his supervision be present and in attendance 30 minutes before their scheduled shifts for pre-shift meetings.

54.

Mr. Paul questioned the legality of the pre-shift meeting requirement, and upon concluding that it was unlawful for SDI to require its employees to attend pre-shift meetings without pay, Mr. Paul verbally complained about the pre-shift meeting requirement to Gabe Thibodeaux, who upon information and belief is currently an assistant project manager with SDI. In response to Ms. Paul's complaint, Mr. Thibodeaux threatened Mr. Paul and told him that if there were any complaints about this arrangement, SDI would take 30 minutes each day from everyone's paycheck. Mr. Paul understood this to be a threat of retaliation from SDI's

management and that he and other employees would be disciplined or face retaliation if they asked questions about their rights to be paid for all of the time that they worked.

55.

When Ms. Popielewski began complaining to SDI management about the pre-shift meeting requirement, Mr. Paul was instructed to begin targeting her since Mr. Paul was her supervisor. Specifically, he was instructed by SDI management to write her up every single time she was late for pre-shift meetings even by a single minute. Additionally, Gabe Thibodeaux instructed Mr. Paul that all writeups for Ms. Popielewski were to be sent directly to him, which deviated from the standard protocol at SDI for handling writeups. Mr. Paul understood that he was told to do this so that SDI could create a record regarding Ms. Popielewski that SDI could later use as support for taking disciplinary action against her and/or terminating her in retaliation for her complaints about the pre-shift meeting requirement.

## ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF ARLESIA JACKSON

56.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

57.

Plaintiff Arlesia Jackson was employed by SDI beginning on or about September 2021 until her employment ended on or about April 2023.

58.

During her employment with SDI, Ms. Jackson worked as a senior officer at the Sasol Lake Charles Chemical Complex.

59.

Ms. Jackson's scheduled shifts at SDI generally began at 5:00 a.m. and ended at 5:00 p.m.

60.

At all times during her employment with SDI, Ms. Jackson was required to attend pre-shift meetings which began 30 minutes before every scheduled shift.

61.

SDI did not pay Ms. Jackson for any of the time she attended the mandatory pre-shift meetings each day of her employment.

62.

On multiple occasions, Ms. Jackson verbally complained to her team leader Chandler Levi about the requirement that she be required to attend pre-shift meetings beginning at 4:30 a.m. even though she was not allowed to clock in until 5:00 a.m. However, those complaints were ignored by SDI.

63.

Ms. Jackson understood that attendance at the pre-shift meetings was mandatory as that is what she was told by her supervisors. Her understanding was confirmed by the fact that she was disciplined by being assigned points on at least one occasion when she arrived for a 4:30 a.m. pre-shift meeting at 4:35 a.m.

## ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF GWENDOLYN BROWN

64.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

65.

Plaintiff Gwendolyn Brown was employed by SDI beginning on or about August 12, 2021, until her employment was terminated by SDI on or about September 2, 2022.

66.

During her employment with SDI, Ms. Brown worked as a security officer at the Sasol Lake Charles Chemical Complex.

67.

Ms. Brown's scheduled shifts at SDI generally began at 5:00 a.m. and ended at 5:00 p.m.

68.

At all times during her employment with SDI, Ms. Brown was required to attend pre-shift meetings which began 30 minutes before every scheduled shift.

69.

SDI did not pay Ms. Brown for any of the time she attended the mandatory pre-shift meetings each day of her employment.

70.

During her employment with SDI, Ms. Brown sometimes clocked out as late as 5:30 pm, even though her shift ended at 5:00 p.m. However, SDI did not pay Ms. Brown for the time she worked after 5:00 p.m.

71.

At the beginning of her employment, Ms. Brown verbally complained to SDI supervisors, including Ryan Ardoin and Daniel Martin, about not being paid for pre-shift meetings. The response she was given is that the time would be taken out of her lunch. However, Ms. Brown, like the other SDI employees, did not get a lunch break, so that threatened action would have

further deprived her and other SDI employees of additional pay owed to them for time worked during their shifts.

72.

Ms. Brown understood that attendance at the pre-shift meetings was mandatory as that is what she was told by her supervisors. Her understanding was confirmed by the fact that she was threatened with being written up for being late for the pre-shift meetings on approximately two occasions.

### ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF KAYLA DODD

73.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

74.

Plaintiff Kayla Dodd was employed by SDI beginning on or about April 12, 2021, until her employment ended on or about July 2022.

75.

During her employment with SDI, Ms. Dodd worked as a guard at the Sasol Lake Charles Chemical Complex from approximately June 2021 until July 2022.

76.

Ms. Dodd's scheduled shifts at SDI generally began at 5:00 a.m. and ended at 5:00 p.m.

77.

At all times during her employment with SDI, Ms. Dodd was required to attend pre-shift meetings which began 30 minutes before every scheduled shift.

78.

SDI did not pay Ms. Dodd for any of the time she attended the mandatory pre-shift meetings each day of her employment.

79.

On multiple occasions, Ms. Dodd verbally complained to her team leaders about the requirement that she be required to attend pre-shift meetings beginning at 4:30 a.m. even though she was not allowed to clock in until 5:00 a.m. However, she was told that it was the rule and she had to follow it.

80.

Ms. Dodd understood that attendance at the pre-shift meetings was mandatory as that is what she was told by her supervisors. Her understanding was confirmed by the fact that she was disciplined for being late for the pre-shift meetings by being suspended for three days on different occasions.

## ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF ZMONTE BANKS

81.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

82.

Plaintiff Zmonte Banks was employed by SDI beginning on or about October 2021, until her employment ended on or about December 2022.

83.

During her employment with SDI, Ms. Banks worked as a security officer Sasol Lake Charles Chemical Complex.

84.

Ms. Banks' scheduled shifts at SDI generally began at 5:00 p.m. and ended at 5:00 a.m.

85.

At all times during her employment with SDI, Ms. Banks was required to attend pre-shift meetings which began 30 minutes before every scheduled shift.

86.

SDI did not pay Ms. Banks for any of the time she attended the mandatory pre-shift meetings each day of her employment.

87.

During her employment with DSI, Ms. Banks also regularly performed work for SDI after clocking out, but she was not paid for any of the time she performed such work.

88.

On approximately two occasions, Ms. Banks verbally complained to her supervisor Crystal Cole about the requirement that she be required to attend pre-shift meetings without pay. However, Ms. Banks was told that she needed to stop complaining, and she was written up.

89.

Ms. Banks understood that attendance at the pre-shift meetings was mandatory as that is what she was told by her supervisors. Her understanding was confirmed by the fact that she was disciplined for being late for the pre-shift meetings by being given written warnings.

### COUNT I
### Unpaid Minimum Wage and Overtime Wages Under the FLSA
### *On Behalf of All Plaintiffs and the FLSA Collective*

90.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

91.

The plaintiffs bring Count I individually and on behalf of all similarly situated employees, specifically: All hourly employees who are currently or were formerly employed by Stratigos Dynamics, Inc. ("SDI") and worked at the Sasol Lake Charles Chemical Complex located in West Lake, Louisiana, and who performed work in attending mandatory pre-shift meetings and/or continuing to work after the end of their shifts, but who were not compensated for such work at any time since March 26, 2020, through the final disposition of this case (the proposed "FLSA Collective").

92.

SDI is an "employer" and an "enterprise" and is engaged in "commerce" within the meaning of the FLSA. 29 U.S.C. § 203(b), (d), (r), and (s).

93.

The FLSA requires covered employers like SDI to pay non-exempt employees like the plaintiffs and the FLSA Collective no less than $7.25 per hour for all hours worked, as well as one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek. 29 U.S.C. § 206 and 207.

94.

The plaintiffs and the FLSA Collective regularly worked more than 40 hours per week for SDI, but SDI did not properly compensate them for the statutory minimum wage owed to them for all regular hours worked, nor the statutory amounts due for all of their overtime hours as required by the FLSA.

95.

SDI did not and has not made a good-faith effort to comply with the FLSA as it relates to the compensation of the plaintiffs and the FLSA Collective.

96.

SDI knew that the plaintiffs and the FLSA Collective worked regular and overtime hours without proper compensation, and it willfully failed and refused to pay the plaintiffs and the FLSA Collective wages at the required minimum wage and overtime rates for all hours worked. *See* 29 U.S.C. § 255.

97.

SDI's willful failure and refusal to pay the plaintiffs and the FLSA Collective the mandatory minimum and overtime wages for all time worked violates the FLSA. 29 U.S.C. § 206 and 207.

98.

As a direct and proximate result of SDI's unlawful practices, the plaintiffs and the FLSA Collective suffered and continue to suffer wage loss and are therefore entitled to recover unpaid minimum and overtime wages for up to three years prior to the filing of their claims, liquidated damages or prejudgment interest, attorney fees and costs, and such other legal and equitable relief as the Court deems just and proper.

99.

The plaintiffs consent in writing to assert their claims for unpaid wages under the FLSA pursuant to 29 U.S.C. § 216(b). The plaintiffs' signed consent forms have been filed with the Court as Exhibits to the First Superseding and Amending Complaint (Doc. 8-1). As this case proceeds, it is likely that other individuals will file consent forms and join as opt-in plaintiffs.

100.

The plaintiffs and the FLSA Collective are all victims of SDI's repeated, systematic, and consistent illegal policies that have resulted in willful violations of their rights under the FLSA, which have caused significant damage to the plaintiffs and the FLSA Collective.

101.

These individuals would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join by filing their written consent.

**COUNT II**
**Violation of the Anti-Retaliation Provision of the FLSA, 29 U.S.C. § 215(a)(3)**
***On Behalf of Plaintiff Angelica Popielewski***

102.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

103.

The FLSA prohibits retaliation against employees and former employees because they assert their rights under the FLSA. The provision prohibits, among other things, "any person" from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter [8 of the FLSA], or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3).

104.

SDI violated 29 U.S.C. § 215(a)(3) in retaliating against Ms. Popielewski by reassigning her to an unfavorable shift assignment because of and immediately following her complaints to Amy Benoit on September 15, 2022, regarding SDI's failure to comply with the FLSA.

105.

SDI further violated 29 U.S.C. § 215(a)(3) in terminating Ms. Popielewski because of her complaints and questioning during the course of her employment about SDI's unlawful practice in violation of the FLSA of mandating Ms. Popielewski and other similarly situated employees to be present 30 minutes before their shifts for work-related matters without pay and to continue working after their shifts without pay, and for informing SDI and its management that she believed this practice to be unlawful.

106.

As a result of SDI's unlawful retaliatory reassignment and termination of Ms. Popielewski in violation of the FLSA, she suffered and continues to suffer damages, including past and future lost wages and benefits as well as general damages, including mental anguish and emotional distress, for which she is entitled to an award of monetary damages, liquidated damages or prejudgment interest, attorney fees and costs, and such other legal and equitable relief as the Court deems just and proper, pursuant to 29 U.S.C. § 216(b).

**PRAYER FOR RELIEF**

107.

**WHEREFORE**, Plaintiffs Angelica Popielewski, Brandon Paul, Arlesia Jackson, Gwendolyn Brown, Kayla Dodd, and Zmonte Banks, each individually and on behalf of the proposed FLSA Collective, pray for relief as follows:

a) A finding that the plaintiffs and the FLSA Collective are similarly situated;

b) Certification of this case as a collective action pursuant to 29 U.S.C. § 216(b);

c) Authorization for the prompt issuance of notice to all those similarly situated, apprising them of the pendency of this action and providing them with the opportunity to assert timely FLSA claims by filing individual consent forms;

d) A finding that SDI's violations of the FLSA are willful pursuant to 29 U.S.C. § 255(a);

e) Judgment against SDI for an amount equal to the plaintiffs' and the FLSA Collective's unpaid back wages at the applicable minimum wage and/or overtime rates;

f) An amount equal to the plaintiffs' and the FLSA Collective's damages as liquidated damages;

g) Judgment against SDI for plaintiff Angelica Popielewski's damages caused by SDI's violation of the FLSA's anti-retaliation provision, including past and future lost wages and benefits, general damages, including mental anguish and emotional distress, and all other damages available under the law;

h) An amount equal to plaintiff Angelica Popielewski's damages caused by SDI's violation of the FLSA's anti-retaliation provision as liquidated damages;

i) All costs and attorneys' fees incurred in prosecuting this suit;

j) An award of any pre- and post-judgment interest;

k) Leave to add additional plaintiffs or claims by motion, the filing of written consent forms, or any other method approved by the Court; and

l) All further relief as the Court deems just and equitable.

Respectfully submitted:

Simien & Simien, L.L.C.
Attorneys and Counselors at Law
7908 Wrenwood Boulevard
Baton Rouge, Louisiana 70809
Telephone:  (225) 932-9221
FAX:  (225) 932-9286

_____*s/ Roy Bergeron, Jr.*_____
By:    Eulis Simien, Jr., Bar # 12077
       eulissimien@simien.com
       Jimmy Simien, Bar # 1598
       jimmysimien@simien.com
       Roy Bergeron, Jr., Bar # 33726
       roybergeron@simien.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of February, 2024, a copy of this pleading has been served on all known counsel of record via the Court's CM/ECF filing system and/or via email.

_____*s/Roy Bergeron, Jr.*_____
Roy Bergeron, Jr.