UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **ANGELICA POPIELEWSKI ET AL** | **:** | **DOCKET NO. 2:23-cv-00703** |
| **VERSUS** | **:** | **JUDGE JAMES D. CAIN, JR.** |
| **STRATIGOS DYNAMICS INC.** | **:** | **MAGISTRATE JUDGE LEBLANC** |

### REPORT AND RECOMMENDATION

Before the Court is the Motion for Leave of Court to File Plaintiffs' Third Superseding and Amending Complaint (the "Motion"). Doc. 30. The time for response has passed with none being filed, making the Motion ripe for resolution. The Motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this court. For reasons set forth below, the Court **RECOMMENDS** that the Motion be **DENIED**.

### I.
#### BACKGROUND

This action was initiated by the filing of a Collective Action Complaint Under the Fair Labor Standards Act by plaintiff Angelica Popielewski against her former employer, Stratigos Dynamics, Inc. ("SDI") for SDI's alleged failure to pay Ms. Popielewski and all other similarly situated SDI employees minimum wages and overtime pay as required by the Fair Labor Standards Act ("FLSA") for their attendance at mandatory pre-shift meetings and for SDI's alleged retaliatory termination of Ms. Popielewski in violation of the FLSA. Doc. 1. The Complaint was amended to add Brandon Paul, Arlesia Jackson, Gwendolyn Brown, Kayla Dood, and Zmonte Banks as additional plaintiffs with Ms. Popielewski (collectively, "Plaintiffs"). Doc. 8. Plaintiffs

later amended their Complaint a second time for purposes of narrowing the scope of the litigation to cover only those persons employed by SDI at the Sasol Chemical Complex in Westlake, Louisiana. Docs. 18, 23. This amendment was intended to aid the parties in pursuing an amicable resolution of this matter. Doc. 18.

In further aid of the parties' efforts at resolution, a Joint Motion for Certification as Collective Action and Court Supervised Notice was filed. Doc. 16. This motion was granted, and the following collective was certified:

> All hourly employees who are currently or were formerly employed by Stratigos Dynamics, Inc. ("SDI") and worked at the Sasol Lake Charles Chemical Complex located in Westlake, Louisiana, and who performed work in attending mandatory pre-shift meetings and/or continuing to work after the end of their shifts, but who were not compensated for such work at any time from May 26, 2020, through the final disposition of this case.

Doc. 19. Following certification and a 90-day notice period that ended June 20, 2024, approximately 97 additional persons were joined in the action as opt-in plaintiffs. Docs. 25 – 28. On or about January 6, 2025, and before resolution was achieved, SDI filed for bankruptcy under Chapter 7. *See In re Stratigos Dynamics, Inc.*, No. 25-20006 (Bankr. W.D. La.); doc. 30, ¶6.

In response to the bankruptcy filing, Plaintiffs now seek leave to amend their complaint to add new defendants. Doc. 30, ¶ 4. The proposed additional defendants are individuals who were also employed by SDI and who Plaintiffs assert were also their "employers" as defined by the FLSA. *Id.* Plaintiffs contend SDI and the proposed defendants, as "employers," are jointly and severally liable. *Id.* at ¶ 6.

Plaintiffs argue good cause exists for the addition of the new defendants as a consequence of SDI's bankruptcy filing. Doc. 30 at ¶¶ 5-6. According to Plaintiffs, SDI's bankruptcy filing will "unduly delay or reduce the ability of the plaintiffs to recover against SDI for the unpaid wages and other amounts that are rightfully owed to them under the FLSA." *Id.* at ¶ 6. Adding the

additional defendants, Plaintiffs submit, will allow them to proceed with their claims and collect some or all of the amounts owed to them without waiting for the resolution of SDI's bankruptcy proceedings. *Id.* Accordingly, they also contend the addition of the proposed defendants will not delay this action, but rather, will allow it to resolve sooner. *Id.* at ¶ 7. Finally, Plaintiffs argue SDI's bankruptcy filing does not affect the claims against other liable parties. *Id.* at ¶ 9 (citing *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985), which states that "[b]y its terms the automatic stay applies only to the debtor, not to co-debtors under Chapter 7 or Chapter 11 of the Bankruptcy Code nor to co-tortfeasors.").

Plaintiffs sought SDI's consent to the amendment but, in light of SDI's bankruptcy, SDI's counsel in this matter felt constrained to take a position on the motion. Doc. 30, ¶ 11. Accordingly, the motion will be treated as unopposed, subject, however, to the Court's evaluation of whether leave is appropriate pursuant to Federal Rule of Civil Procedure 15.

## II.
### LAW AND ANALYSIS

On a motion to amend, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. Proc. 15(a)(2). Courts should grant leave to amend "when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any other parties to the action." *See* 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1504, 258–59 (3d. ed. 2010). "Leave to amend, however, is by no means automatic." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845-46 (5th Cir. 1992). The decision whether to grant leave is squarely in the discretion of the court, but the court "must possess a 'substantial reason' to deny a party's request for leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic*

*Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). When ruling on a motion to amend, the court should consider

> whether permitting the pleading would cause undue delay in the proceedings or undue prejudice to the nonmovant, the movant is acting in bad faith or with a dilatory motive, the movant has previously failed to cure deficiencies by prior pleadings, or the proposed pleading is futile in that it adds nothing of substance to the original allegations or is not germane to the original cause of action.

*Lewis v. Knutson*, 699 F.2d 230, 239 (5th Cir. 1983).

Plaintiffs' amendment would not unduly delay the proceedings with respect to SDI as the action will likely be stayed pending resolution of SDI's bankruptcy proceeding. While SDI may be prejudiced if the amendment is allowed and the case proceeds without it, bankruptcy proceedings do not protect co-defendants,[1] and so any such prejudice would not be undue. There is no evidence the motion was filed by Plaintiffs in bad faith or with dilatory motive or that Plaintiffs have failed previously to cure deficiencies by prior pleadings. Thus, futility of the amendment is the only consideration that requires discussion.

Under Rule 15, "an amendment is futile if it 'would fail to state a claim for relief upon which relief could be granted.'" *Spillers v. Louisiana PHS, L.L.C.*, No. CV 3:21-00762, 2022 WL 1423179, at *2 (W.D. La. Mar. 4, 2022) (quoting *Stripling v. Jordan Production Co.*, LLC, 234 F.3d 863, 873 (5th Cir. 2000)). To determine whether a complaint fails to state a claim on which relief may be granted, the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[1] The Fifth Circuit has held that proceedings against co-defendants are allowed to continue. *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983) (holding that "the protections of [11 U.S.C.] § 362 neither apply to co-defendants nor preclude severance."); *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985) ("[W]hile the stay protects the debtor who has filed a bankruptcy petition, litigation can proceed against other co-defendants.").

544, 570, 127 S. Ct. 1955 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief. *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955).

The viability of Plaintiffs' amendment is dependent upon whether the proposed defendants are considered "employers" of the Plaintiffs as defined by the FLSA.[2] Indeed, "[t]o be bound by the requirements of the Fair Labor Standards Act, one must be an 'employer.'" *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984), *cert. denied,* 471 U.S. 1124, 1124 (1985). Therefore, to avoid being deemed futile, the proposed complaint must present sufficient facts plausible on their face that show the proposed defendants are employers as defined by the FLSA.

Pursuant to the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C § 203(d). "The Supreme Court has characterized the FLSA's definition of employer as 'expansive' and has held that 'managerial responsibilities' and 'substantial control of the terms and conditions of the [employee's] work' suffice to create employer status." *Spillers*, 2022 WL 1423179 at *3 (citing *Grim Hotel*, 747 F.2d at 971–72). Indeed, "[t]he FLSA's definition of employer must be liberally construed to effectuate Congress' remedial intent." *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993) (citing *Donovan v. Sabine Irrigation Co.,* 695 F.2d 190, 194 (5th Cir. 1983)).

Accordingly, the Fifth Circuit has held that "the FLSA's definition of employer is 'sufficiently broad to encompass an individual who, though lacking a possessory interest in the "employer" corporation, effectively dominates its administration or otherwise acts, or has the

---

[2] "[A]ny employer who violates the FLSA minimum wage statute, 29 U.S.C. § 206, or the FLSA maximum hours statute, 29 U.S.C. § 207, is 'liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.'" *Clifton v. Famous Bourbon Mgmt. Grp., Inc.*, No. CV 20-2764, 2025 WL 105290, at *9 (E.D. La. Jan. 15, 2025) (citing 29 U.S.C. § 216(b)).

power to act, on behalf of the corporation vis-a-vis its employees.'" *Id.* (quoting *Sabine Irrigation Co.,* 695 F.2d at 194-95). Thus, "an individual qualifies as an employer if he 'independently exercised control over the work situation.'" *Id.* (quoting *Grim Hotel*, 747 F.2d at 972). This broad interpretation also leads to the conclusion that "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Grim Hotel*, 747 F.2d at 972. Relevant jurisprudence, however, does not suggest "that merely being an officer or shareholder subjects an individual to FLSA liability." *Gray v. Powers*, 673 F.3d 352, 356 (5th Cir. 2012). Specifically, in *Gray*, the Fifth Circuit stated,

> The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies. An individual's operational control can be shown through his power to hire and fire, ability to supervise, power to set wages, and maintenance of employment records. While each element need not be present in every case, finding employer status when none of the factors is present would make the test meaningless. We decline to adopt a rule that would potentially impose individual liability on all shareholders, members, and officers of entities that are employers under the FLSA based on their position rather than the economic reality of their involvement in the company.

*Id.* at 357.

Thus, "[t]o determine whether an individual or entity is an employer, the court considers whether the alleged employer: '(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* at 355 (quoting *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010)). This is called the "economic realities test." "While each element need not be present in every case, finding employer status where none or only one of the factors is present would render the test meaningless." *Spillers*, 2022 WL

1423179, at *3 (citing *Gray*, 673 F.3d at 354-55; *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 253 (5th Cir. 2012)). Indeed, "[c]ase law suggests that plaintiffs must allege facts to support multiple economic realities factors to state a plausible claim for employer liability under the FLSA." *Rule v. S. Indus. Mech. Maint. Co.*, No. 5:16-CV-01408, 2019 WL 2881545, at *5 (W.D. La. July 3, 2019) (citing *Dupre v. Westlawn Cemeteries*, No. 13-356, 2013 WL 3730125, at *3 (E.D. La. July 12, 2013); *Martin*, 688 F.3d at 253 (sustaining summary judgment in favor of defendant where plaintiff only adduced evidence to support one economic realities factor)).

Plaintiffs propose to join five new defendants: Jason Wilbur, Dave Thibodeaux, Gabe Thibodeaux, Ryan Ardoin, and Amy Benoit (collectively, the "proposed defendants"). Doc. 30, att. 2, ¶ 1. Plaintiffs claim each of the proposed defendants is liable as an employer under the FLSA. Doc. 30, ¶ 4. In support of this claim, Plaintiffs simply list each proposed defendant's job position and generally assert that they proposed, developed, approved and/or implemented the policies and procedures at issue in this action. *Id.* at att. 2, ¶¶ 3-6.[3] Each of the proposed defendant's job titles suggests a managerial position, but there is no description of the duties, responsibilities or powers vis-à-vis the Plaintiffs held by each position. *Id.* "[M]erely being an officer or shareholder" will not subject an individual to FLSA liability. *Gray*, 673 F.3d at 356. Thus, job titles alone are insufficient to support the claim that the proposed defendants are "employers" as defined by the FLSA.

There are additional allegations that Gabe Thibodeaux communicated the policies at issue to employees. Doc. 30, att. 2, ¶ 5. Also, plaintiff Brandon Paul alleges he complained to Gabe

---

[3] Specifically, Plaintiffs assert that CEO and President Jason Wilbur and COO and Vice-President Dave Thibodeaux "exercised significant control over the day-to-day operations of SDI's business, including developing, approving, and implementing the policies and procedures at issue in this suit," that assistant site manager Gabe Thibodeaux and project manager Ryan Ardoin "proposed, developed, and/or implemented the policies at issue in this lawsuit," and that team leader and administrator Amy Benoit "implemented policies and procedures mandating SDI employees to attend pre-shift meetings without pay." Doc. 30, att. 2, ¶¶ 3-6.

Thibodeaux, "who upon information and belief was an assistant project manager with SDI," about the required unpaid pre-shift meetings and that Mr. Thibodeaux threatened that "if there were any complaints about this arrangement . . . Defendants would take 30 minutes each day from everyone's paycheck." *Id*. at ¶58.  Mr. Paul "understood this to be a threat of retaliation from SDI's management." *Id*.  While Mr. Paul's allegations with respect to Mr. Thibodeaux suggest Mr. Thibodeaux's knowledge of the policies at issue, and even possibly the position of "Defendants" or "SDI's management" about these policies, Mr. Paul makes no specific allegations regarding Mr. Thibodeaux's authority or ability to establish, to change, or to otherwise influence such policies.

There also are additional allegations regarding proposed defendant Amy Benoit by Ms. Popielewski.  Almost immediately upon starting her employment with SDI, Ms. Popielewski began complaining about the unpaid pre-shift meetings.  Doc. 30, att. 2, ¶ 36.  Ms. Popielewski complained to various "team leaders" and "administrators,"[4] including eventually Ms. Benoit who served in both capacities with respect to Ms. Popielewski at different times.[5] Id. at ¶¶ 37-40.  In these instances, those individuals, including Ms. Benoit, offered to "look into" the challenged policies, but cautioned Ms. Popielewski about the need to simply comply.  *Id*.  Interestingly, while Ms. Popielewski raised her complaints to "team leaders," the proposed amended complaint makes clear that the challenged pre-shift attendance requirement was "imposed upon all SDI security guards, officers, *team leaders*, and other SDI employees." *Id*. at ¶ 15 (emphasis added).  In other words, the persons to whom she complained were subject to the same allegedly unlawful practice.

---

[4] The court notes that, despite these complaints to others holding the positions of team leader and administrator, all of whom presumably would have had the same authority as Ms. Benoit when she held these same positions, Plaintiffs have only named Ms. Benoit out of this contingent as an alleged "employer."

[5] Various other Plaintiffs have made generic allegations that they complained to "team leaders" and "supervisors," about the unpaid pre-shift meeting requirement without result, but none make allegations against Ms. Benoit and none allege these persons were capable of anything other than relaying those complaints up the chain of command.  See Doc. 30 at ¶¶66-67 (Arlesia Jackson); ¶¶75-76 (Gwendolyn Brown); ¶¶83-84 (Kayla Dodd); ¶¶92-93 (Zmonte Banks)

Indeed, Ms. Popielewski makes relevant allegations about another SDI employee, Chandler Levi. According to Ms. Popielewski, Mr. Levi was demoted from "administrator" to "team leader", at which time Ms. Benoit was promoted from "team leader" to "administrator." Doc. 30, att. 2, ¶ 42. Pertinently, Ms. Popielewski relates that Mr. Levi agreed with her about the unlawfulness of SDI's failure to pay for pre-shift and post-shift work, "but he told Ms. Popielewski he did not believe it was worth losing his job over it." *Id*. In other words, as both an administrator and a team leader, Mr. Levi apparently believed his positions did not afford him the authority to influence these policies. Likewise, plaintiff Brandon Paul acknowledged that he was employed by SDI as a "supervisor" and that, although he believed the pre-shift meeting requirement to be unlawful, he believed his job required him to enforce the policy and he could only complain to his superiors about it. *Id*. at ¶¶57-58. Plaintiffs' allegations against Ms. Benoit offer no basis to suggest her authority was any different. Instead, Ms. Popielewski further alleges that she questioned Ms. Benoit about "why the Defendants do not have visible FLSA posters and other Department of Labor posters with information about employee rights under federal law," to which Ms. Benoit responded "that these issues were above her level of intelligence." *Id*. at ¶43. Again, evidencing that such matters are beyond Ms. Benoit's authority and control.

As a final matter with respect to Ms. Benoit, Plaintiffs allege she "had authority to and actually did hire and fire employees." Doc. 30, att. 2, ¶6. This conclusory allegation is sought to be supported by Ms. Popielewski's specific allegations. Ms. Popielewski alleges that, after complaining to Ms. Benoit about SDI's perceived FLSA violations, she was reassigned from her regular work location to a less desirable assignment. *Id*. at ¶41. However, she does not attribute the decision to reassign her to Ms. Benoit. *Id*. ("The Defendant's act of reassigning . . . ."). Ms. Popielewski was eventually terminated by SDI, but with respect to Ms. Benoit's role in this

termination, she alleges that in a telephone call "Ms. Benoit informed [her] that she was being terminated." *Id*. at ¶45.  While this allegation confirms Ms. Benoit communicated to Ms. Popielewski the fact of her termination by SDI, it does not assert that Ms. Benoit made that decision or had the authority to do so.  Instead, Ms. Popielewski complains about the "purported reason that the *Defendants* gave for terminating" her, *id*. at ¶46 (emphasis added), and ultimately charges "[t]he *Defendants* further violated 29 U.S.C. § 215(a)(3) in terminating" her, *id*. at ¶111 (emphasis added).

The additional allegations against Gabe Thibodeaux and Amy Benoit fail to demonstrate "operational control" by these individuals.  Instead, these allegations beg the question whether the "economic realty" of each of these proposed defendants was that of decision follower, as opposed to decision maker.  Regardless, none of the allegations against Mr. Thibodeaux, and only the allegations of hiring and firing made with respect to Ms. Benoit, implicate an "economic realities" factor, and allegations of at least two of the factors are required to state a plausible claim for employer liability.  *See Rule*, 2019 WL 2881545 at *5 (and cases cited).

The allegations of employer status with respect to the proposed new individual defendants are threadbare, conclusory statements that fail to provide specific facts, instances, or examples of how each of the proposed defendants was involved in the company or had actual control of Plaintiffs as SDI employees.  There are no specific factual allegations demonstrating the extent to which each of the proposed defendants had power to hire and fire employees, to control schedules or conditions of employment, to determine the rate of payment, or maintained employment records.  To the contrary, throughout the vast majority of Plaintiffs' proposed amended complaint, they offer only generalized allegations concerning all "Defendants."

Such group pleading has often been held inadequate under a Rule 12(b)(6) analysis. *See, e.g.*, *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021) ("Because the notice pleading requirement of the Federal Rules of Civil Procedure entitle each defendant to know what he or she did that is asserted to be wrongful, allegations based on a 'theory of collective responsibility' cannot withstand a motion to dismiss."); *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 387 (5th Cir. 2017) ("Plaintiffs make only generalized allegations regarding Defendants' alleged disparate treatment of Body by Cook versus non-minority-owned shops. These allegations are not specific enough to plead discriminatory intent. They fail to identify which Defendant discriminated . . ."); *Alexander v. City Police of Lafayette*, No. 6:11-CV-01749, 2021 WL 4396016, at *10 (W.D. La. Sept. 24, 2021) ("Courts have often concluded that allegations that plead liability with respect to a collective group of defendants without distinguishing the conduct of each individual defendant are deficient."); *Tilson v. DISA, Inc.*, No. CV 17-240-SDD-EWD, 2019 WL 208871, at *2 (M.D. La. Jan. 15, 2019) (in a group pleading context, analyzing only well-pleaded facts against a particular defendant to determine if pleading stated a cause of action); *Cain v. City of New Orleans*, No. CV 15-4479, 2016 WL 2849498, at *5 (E.D. La. May 13, 2016) ("This pleading structure—lumping all defendants together and asserting identical allegations as to each, without distinction—largely prevents the Court from discerning which defendants are allegedly responsible for which allegedly unlawful actions."). As "allegations based on a 'theory of collective responsibility' cannot withstand a motion to dismiss," *Martinez*, 846 F. App'x at 243, Plaintiffs' allegations regarding all "Defendants" are not sufficiently specific to support that each proposed defendant is a FLSA "employer."

As currently pleaded, Plaintiffs' proposed amended complaint fails to contain sufficiently stated allegations to satisfy the economic realities test and, thereby, to state a plausible claim

against each of the proposed individual defendants as an "employer" under the FLSA. As such, to permit the amendment would be futile.

## III.
### CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiffs' Motion for Leave to File Third Superseding and Amending Complaint [doc. 30] be **DENIED** without prejudice to Plaintiffs' right to refile the motion with a proposed amended complaint that sufficiently alleges liability against any or all of the proposed defendants, if possible.

Under the provisions of 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure, parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglas v. United Services Automobile Ass'n.*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

**THUS DONE AND SIGNED** in chambers this 30th day of September, 2025.

_____
THOMAS P. LEBLANC
UNITED STATES MAGISTRATE JUDGE